HOLDSWORTH v NASH MANUFACTURING, INC

Docket No. 87502. Submitted May 6, 1987, at Detroit. Decided July 6, 1987. Leave to appeal denied, 429 Mich —.

Thomas R. Holdsworth and Debra J. Holdsworth brought an action in the Wayne Circuit Court against Nash Manufacturing, Inc., and Dehner's Sport Center, Inc., for damages for injuries sustained by Thomas Holdsworth in a water-skiing accident. A jury returned a verdict in favor of the plaintiffs for $90,000 and the trial court, Charles S. Farmer, J., entered a judgment thereon. Defendants' motion for judgment notwithstanding the verdict or a new trial was thereafter denied. Defendants appeal.

The Court of Appeals *held:*

1. Error did not occur in regard to plaintiffs' late filing of their witness list. Defendants were not surprised by the testimony of plaintiffs' expert, Donald Van Kirk. The denial of defendants' motion to add an expert to their witness list was not error.

2. The trial court correctly instructed the jury consistent with plaintiffs' theory that defendants' negligent manufacture and testing of the water skis caused Thomas Holdsworth's injury.

3. No grounds for reversal are shown in regard to the testimony of plaintiffs' expert.

4. The trial court did not abuse its discretion in ruling that the defendants' expert witness' personal knowledge regarding

REFERENCES

Am Jur 2d, Appeal and Error § 881.

Am Jur 2d, Evidence §§ 264, 265, 1091.

Am Jur 2d, Expert and Opinion Evidence §§ 2, 3.

Am Jur 2d, Products Liability §§ 260 *et seq.,* 473 *et seq.,* 483.

Products liability: modern cases determining whether product is defectively designed. 96 ALR3d 22.

What are "merchantable" goods within meaning of UCC § 2-314 dealing with implied warranty or merchantability. 83 ALR3d 694.

See also the annotations in the Index to Annotations under Circumstantial Evidence; Implied Warranties; Products Liability; Proximate Cause.

the circumstances of a separate accident was irrelevant to the fact at issue in the case.

Affirmed.

1. TRIAL — WITNESSES — MOTIONS AND ORDERS — APPEAL.

A trial court's denial of defendants' motion to add an expert witness to their witness list may be determined not to be erroneous where the motion was made two months before the original trial date and it would have meant a delay of trial if the motion had been granted.

2. PRODUCTS LIABILITY — IMPLIED WARRANTY — DEFECTIVE PRODUCT.

An implied warranty is breached when a product is transferred from the manufacturer's possession while in a defective state, failing either to be reasonably fit for the particular purpose intended or to be of merchantable quality.

3. PRODUCTS LIABILITY — IMPLIED WARRANTY — PROXIMATE CAUSE.

A plaintiff may recover against the manufacturer of a defective product under a theory of implied warranty only where the plaintiff proves a defect attributable to the manufacturer and a causal connection between that defect and the injury or damage of which he complains.

4. PRODUCTS LIABILITY — TRIAL — JURY — EVIDENCE.

It is within the province of a jury in a products liability case to infer the existence of a defective condition from circumstantial evidence alone; an actual defect need not be proven.

5. TRIAL — EVIDENCE — APPEAL.

A decision whether to admit evidence rests initially within the discretion of the trial court and that decision will not be set aside absent an abuse of discretion.

6. PRODUCTS LIABILITY — IMPLIED WARRANTY — RISK OF INJURY.

It is the risk of injury and not a particular injury which the law requires a manufacturer to foresee in the design of its products.

*Feikens, Foster, Vander Male & DeNardis, P.C.* (by *Ronald F. DeNardis* and *Joseph E. Kozely*), for plaintiffs.

*Seavitt, Westcott & Stowe* (by *Michael J. Yockey*), for defendants.

Before: BEASLEY, P.J., and HOOD and E. E. BOR-
RADAILE,* JJ.

PER CURIAM. This case, arising from a water-
skiing accident in August, 1978, resulted in a
$90,000 jury verdict in Wayne Circuit Court in
favor of the plaintiffs. Both defendants appeal as
of right. We affirm.

Plaintiff Thomas Holdsworth was skiing with his
wife and others using the boat of Dennis Elliott.
On the date of the injury, after driving around the
lake a few times, plaintiff Thomas Holdsworth was
elected to be the first skier. He adjusted his skis
when he put them on. The skis had been manufac-
tured by defendant Nash Manufacturing, Inc., and
were purchased from defendant Dehner's Sport
Center, Inc., by Elliott in July, 1978. According to
the testimony of Thomas Holdsworth, he jumped
into the water, put on the skis and began skiing
around the lake. The binding on the right ski got
tighter about halfway around the lake. Holdsworth
let go of the rope and went into a controlled fall.
He adjusted the heel binding on the right ski, and
proceeded to ski around the lake two or three
more times. On the last run he was skiing outside
the wake on the right side of the boat. He was
ready to go into a turn when he noticed that the
right slalom ski was bearing right. He began to
fall as he crossed the wake. The left ski popped off,
but the tip of the right ski dug underneath the
water and twisted behind him. The right ski never
released. Holdsworth testified that he knew imme-
diately that his leg had been broken. The muscles
in the right leg had been twisted so that those
normally in the back of the leg were now to the
right and the right foot was twisted so that the
toes faced backward. He was taken to the hospital

---

* Circuit judge, sitting on the Court of Appeals by assignment.

and put into traction. An examination showed that there was a spiral fracture of the femur. He was in the hospital for almost six weeks and in a hip-to-ankle cast from October, 1978, to April, 1979. As Thomas Holdsworth was unable to care for himself, his wife left her job to stay at home to care for him. At trial in June, 1984, he testified that he still suffered pain from the injury and had developed hip, knee and back problems as a result of a ¾" shortening of the right leg.

The primary issue in this case arises from the testimony of Donald Van Kirk, who testified as to his qualifications in biomechanical engineering and accident reconstruction. In reconstructing the accident, Van Kirk relied on the depositions of Thomas and Debra Holdsworth, Daniel Veevers, who was also skiing with the plaintiffs, Elliott and the president and two vice-presidents of defendant Nash. He also examined the hospital and medical records of Thomas Holdsworth, and examined the skis involved. Van Kirk described how he measured and analyzed the skis. After plaintiffs' counsel had established a foundation for his testimony, the court ruled that Van Kirk could testify as to accident reconstruction, the quality control and manufacturing of the skis, and as a biomechanical engineer, but not as a water ski designer.

From his examination of the heel plate on the right ski, Van Kirk gave an opinion that the serrated portions of the plate were wider at the bottom than at the top. He stated that the skis should be designed to release during a fall to lessen the risk of injury to the skier. Van Kirk also stated that defendant Nash used only cosmetic quality-control procedures. There were no manufacturing specifications or tolerance levels in the manufacturing of the skis and particularly in regard to the heel plates. Van Kirk noted that the

poor quality control and manufacturing system allowed the heel plate to move when it should not have. The heel plate should have locked in place when it was on the skier's foot; however, the heel plate could be situated on one side with the other almost coming out of the serrations, thus any vibration could cause the spring to relax or pull in resulting in a loosening or tightening of the binding. In Van Kirk's opinion, a prudent manufacturer would have taken steps to eliminate the quality control and testing defects in order to protect the ultimate consumer.

Defendants presented one witness who worked in marketing for another water ski manufacturing company. The witness was not trained in biomechanical analysis or accident reconstruction. He indicated that his company did not compete with defendant Nash because Nash manufactured a low-cost ski unlike his company which manufactured a high-quality ski. His opinion was that the boat's chop or a wave hit Thomas Holdsworth's right ski causing it to spin back toward Holdsworth and causing Holdsworth to fall with great ferocity.

At the conclusion of trial, the jury returned a verdict in favor of plaintiffs in the amount of $90,000.

Many months later, defendants filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. Defendants claimed that the plaintiffs had failed to present a prima facie case and that the pretrial motion judge had erred by not allowing defendants to add a biomechanical expert to their witness list. The trial judge denied the motion, finding "sufficient testimony to have the jury, as trier of the facts, make a determination of the facts in this case from the hypothetical questions put to the expert that were

based on the testimony of the other witnesses which lead [sic] the expert to render his expert opinion as to the reasons he felt were the causes of the accident."

The first assignment of error that defendants make on appeal continues that made in the trial court under Wayne Circuit Court Local Rule 2.301 (rescinded effective March 1, 1986) which required the parties on or before eighteen months after the filing of the case to exchange lists of all witnesses to be called at trial, including experts. Defendants complain that they filed their witness list in a timely fashion, but that plaintiffs failed to file until much later. Plaintiffs, who filed their witness list eighty-seven days past the eighteen-month deadline, admitted late filing. However, defendants' objection to the late filing, coming six months later, was far from timely itself. Plaintiffs' witness list was filed over a year before trial and defendants were able to take the depositions of all the witnesses they wished. Defendants were not surprised by the testimony of Donald Van Kirk, and failed to show how they were prejudiced by the plaintiffs' late filing. Defendants do claim prejudice in that they were not permitted to add a biomechanical expert to their witness list, their motion being denied by the pretrial motion judge, but their motion did not come until two months before the original trial date. We cannot find error when trial was rapidly approaching and it would have meant a delay of trial if the judge hearing defendants' motion had permitted the late action.

Again, as with the motion question, defendants renew an objection made in their motion for judgment notwithstanding the verdict or new trial that the plaintiffs failed to show a prima facie case by failing to present evidence of design alternatives for the water ski and the binding or of the magni-

tude of risk involved in using the ski. Defendants seem to base their entire argument on a statement from *Owens v Allis-Chalmers Corp,* 414 Mich 413, 432; 326 NW2d 372 (1982):

> In the entirety of plaintiff's proofs, there is no data or other factual evidence concerning the magnitude of the risks involved, the utility or relative safety of the proposed alternatives, or evidence otherwise concerning the "unreasonableness" of risks arising from failure to install driver restraints on the subject forklift model as standard equipment.

Plaintiffs counter that, because they were alleging a manufacturing defect and not a design defect, they did not have to show design alternatives or the magnitude of risk involved in using the skis. We are directed by plaintiffs to *Prentis v Yale Mfg Co,* 421 Mich 670, 683-684; 365 NW2d 176 (1984), in which the Supreme Court said:

> As a term of art, "defective" gives little difficulty when something goes wrong in the manufacturing process and the product is not in its intended condition. In the case of a "manufacturing defect," the product may be evaluated against the manufacturer's own production standards, as manifested by that manufacturer's other like products.
> However, injuries caused by the condition of a product may also be actionable if the product's design, which is the result of intentional design decisions of the manufacturer, is not sufficiently safe. Conscious design defect cases provide no such simple test. The very question whether a defect in fact exists is central to a court's inquiry. *It is only in design defect cases that a court is called upon to supply the standard for defectiveness.*

We note that SJI2d 25.31, labelled "Negligent Design and/or Manufacture-Definition," refers to

the *Owens* case. The civil injury instruction committee in SJI2d 25.32 amended the burden of proof instruction in October of 1984 to allow a judge to instruct on burden of proof as to manufacture or design, taking into account the language of *Owens.* The *Prentis* decision, handed down in December, 1984, is consistent with the delineation between manufacture and design as contained in the burden of proof instruction on product liability. As noted in *Piercefield v Remington Arms Co, Inc,* 375 Mich 85, 98-99; 133 NW2d 129 (1965):

> As made clear above, a plaintiff relying upon the rule must prove a defect attributable to the manufacturer and causal connection between that defect and the injury or damage of which he complains. When able to do that, then and only then may he recover against the manufacturer of the defective product.

The *Piercefield* case involved the filing of a claim in the alternative as to negligence and breach of implied warranty. It notes that an implied warranty is breached when the product is transferred from the manufacturer's possession while in a defective state, failing either to be reasonably fit for the particular purpose intended or to be of merchantable quality.

We find that the plaintiffs proceeded on a theory that defendants' negligent manufacture and testing of the water skis caused Thomas Holdsworth's injury. The trial court correctly instructed the jury consistent with that theory. We are satisfied that no error occurred.

The next challenge that defendants make to the proofs in the case involves the testimony by plaintiffs' expert. Defendants claim that plaintiffs' expert utilized a four-tier inference pyramid as the factual basis for his opinion on causation. Defen-

dants say that plaintiffs' expert improperly reached his conclusion as to causation by relying on the following points:

> (A). That there would have to be some exterior force applied to the ski.
> (B). The heel portion of the same ski moves as a result of the applica— [sic] of the exterior force.
> (C). The moving heel portion travels forward trapping the foot.
> (D). A second set of exterior or outside forces are applied to the ski causing injury to the trapped foot.

The inference pyramid argued by defendants is taken from testimony during defense counsel's cross-examination of the biomechanical expert. Defendants argue that the expert's conclusions were not sufficiently grounded in fact to rise to the level of inferences. Thus, defendants say that each level of the pyramid is improperly supported by only inferences upon inferences.

Plaintiffs, in response, say that the "inference pyramid" that defendants rely on is not accurate, pointing to the following evidence:

(1) Plaintiffs testified that Thomas Holdsworth was injured while water-skiing. Van Kirk deduced that vibration, inherent in skiing through water, was applied to the ski.

(2) Van Kirk's testimony regarding the movement of the heel binding was based on his own inspection of the ski, which revealed that the binding tracks were not parallel, and on the testimony of other witnesses.

(3) That Thomas Holdsworth's foot was trapped in the binding at the time of the fall was demonstrated by the fact that the ski did not come off after the fall.

(4) Thomas Holdsworth testified that the right ski tipped under the water, precipitating his fall. This water over the ski tip, which pulled the ski down and behind Thomas Holdsworth, was the second exterior force applied to the ski.

In *Caldwell v Fox*, 394 Mich 401, 410; 231 NW2d 46 (1975), the Supreme Court stated: "It is within the province of the jury to infer the existence of a defective condition from circumstantial evidence alone; there is no requirement that the actual defect need be proven." Defendants' claim that Van Kirk's opinions were simply inferences on top of inferences is contradicted by the detailed testimony given regarding the expert's analysis and reconstruction of the accident. Defendants have not shown grounds for reversal.

The last issue raised by the defendants relates to the trial court's preventing of defendants' expert from testifying on the foreseeability of the risk of breaking a femur while water-skiing. Defendants had wanted the court to permit their expert to testify about the one instance in his experience in which a person broke a femur while water-skiing. A decision whether to admit evidence rests initially within the discretion of the trial court and that decision will not be set aside absent an abuse of discretion. *Hadley v Trio Tool Co*, 143 Mich App 319; 372 NW2d 537 (1985). Though defendants' expert witness testified that he had had thirty years of water-skiing experience, defendants attempt to elevate that personal experience to a point of showing that such injuries are not reasonably foreseeable by manufacturers. We find no abuse in the trial court's ruling that the witness' knowledge regarding the circumstances of a separate accident is irrelevant to the fact at issue in the case.

We believe that *Prentis, supra,* supports the

proposition that it is the risk of injury and not a particular injury which the law requires a manufacturer to foresee. Both plaintiffs' and defendants' experts testified that the foreseeable risk of injury to a skier increases when the binding does not release during a fall. We do not find an abuse of discretion relative to the trial court's ruling relating to the personal experience of defendants' expert witness.

Affirmed.