REEVES v CINCINNATI, INC

Docket No. 90447. Submitted October 7, 1987, at Detroit. Decided April 3, 1989. Leave to appeal applied for.

Hezekiah Reeves, while operating a power press manufactured by Cincinnati, Inc., and sold to his employer, General Motors Corporation, by Addy-Morand Machinery Company, sustained an injury which required the amputation of the fingers of his right hand. Hezekiah and Alice Reeves thereafter brought a products liability action against Cincinnati, Inc., and Addy-Morand in the Wayne Circuit Court, alleging liability under theories of negligence and implied warranty for defective product design and failure to warn. Plaintiffs contended that the design of the power press was defective based on the omission of a safety device which they claim would have prevented the accident in question. Following the close of plaintiffs' proofs, the trial court, Henry J. Szymanski, J., directed the jury to return a verdict in favor of defendants. Plaintiffs appealed.

The Court of Appeals *held:*

1. In a products liability action alleging defective design on the basis of the omission of a safety device, a prima facie case which would overcome a motion for a directed verdict brought by the defendant requires (1) a showing of the magnitude of the foreseeable risks, including the likelihood of the occurrence of the type of accident precipitating the need for the safety device and the severity of injuries sustainable from such an accident, and (2) a showing of alternative safety devices and whether those devices would have been effective as a reasonable means of minimizing the foreseeable risk of danger. Here, the evidence presented by plaintiffs was sufficient to preclude a directed verdict in favor of defendants.

2. Cincinnati, Inc., was under no duty to place warnings on the power press in light of the open and obvious danger inherent in the operation of the power press. In the event of

REFERENCES

Am Jur 2d, Products Liability §§ 284-286, 359-380, 487-494; Trial §§ 463-504.

Products liability: Modern cases determining whether product is defectively designed. 96 ALR3d 22.

retrial, the question of failure to warn need not be submitted to the jury.

Reversed and remanded for trial.

1. TRIAL — DIRECTED VERDICT.

A trial court, in determining whether to grant a motion for a directed verdict, must view the evidence in a light most favorable to the nonmoving party and determine whether a prima facie case has been established; if the evidence presents material issues of fact upon which reasonable minds can differ, a directed verdict should not be granted and the factual issues must be decided by the jury.

2. PRODUCTS LIABILITY — DEFECTIVE DESIGN.

In a products liability action brought under negligence and implied warranty theories of liability for an alleged improper design of a product, the legal elements of the two theories converge to the point where proofs that suffice for one theory will suffice for the other; proofs that fail to establish a prima facie case on one theory are equally inadequate for the other; under either theory, the crux of liability is whether the manufacturer took reasonable care in light of any reasonably foreseeable use of the product which might cause harm or injury.

3. PRODUCTS LIABILITY — DEFECTIVE DESIGN — SAFETY DEVICES.

In a products liability action alleging defective design on the basis of the omission of a safety device, a prima facie case which would overcome a motion for a directed verdict brought by the defendant requires (1) a showing of the magnitude of the foreseeable risks, including the likelihood of occurrence of the type of accident precipitating the need for the safety device and the severity of injuries sustainable from such an accident, and (2) a showing of alternative safety devices and whether those devices would have been effective as a reasonable means of minimizing the foreseeable risk of danger.

*Meklir, Schreier, Nolish & Friedman, P.C.* (by *Samuel A. Meklir*), and *Jeannette A. Paskin*, for plaintiffs.

*Harvey, Kruse, Westen & Milan, P.C.* (by *Dennis M. Goebel* and *Paul J. Widzinski*), for defendants.

Before: HOLBROOK, JR., P.J., and SHEPHERD and D. L. SULLIVAN,* JJ.

HOLBROOK, JR., P.J. In this products liability case, plaintiffs appeal from a directed verdict entered in favor of defendants. Plaintiff Hezekiah Reeves was injured when a power press unexpectedly cycled, crushing Reeves' right hand so that the fingers had to be medically amputated. Suit for personal injuries was brought against defendants Cincinnati, Inc., the manufacturer of the press, and Addy-Morand Machinery Co., the dealer arranging the sale of the press to Reeves' employer, General Motors Corporation. At trial, plaintiffs introduced evidence to support theories of recovery for negligent design of the press and failure to provide warning of the dangers associated with the press. After plaintiffs rested, the trial court granted a directed verdict, reasoning that the evidence was insufficient to create issues submissible to the jury as to whether the press was unfit for its intended purposes or whether Cincinnati failed to use reasonable care to eliminate foreseeable risks. We reverse and remand for trial.

In determining whether to grant a motion for a directed verdict, the trial court must view the evidence in a light most favorable to the nonmoving party and determine whether a prima facie case is thereby established. *Clery v Sherwood,* 151 Mich App 55, 63-64; 390 NW2d 682 (1986). If the evidence presents material issues of fact upon which reasonable minds can differ, those issues are to be decided by the trier of fact, thereby precluding a directed verdict. *Dixon v W W Grainger, Inc,* 168 Mich App 107, 110; 423 NW2d 580 (1987). A directed verdict for the defendant is properly granted only when the evidence, viewed in this

* Circuit judge, sitting on the Court of Appeals by assignment.

manner, fails to establish a prima facie case. *Goldman v Phantom Freight, Inc,* 162 Mich App 472, 477; 413 NW2d 433 (1987), lv den 429 Mich 867 (1987).

When, as in this case, theories of negligence and implied warranty are both premised on an allegedly improper design of the product, the legal elements of the two theories converge to the point of identicalness; proofs that suffice for one theory will suffice for the other; proofs that fail to establish a prima facie case on one theory are equally inadequate for the other. See *Prentis v Yale Mfg Co,* 421 Mich 670; 365 NW2d 176 (1984). Under either theory, the crux of liability is "whether the manufacturer took reasonable care in light of any reasonably foreseeable use of the product which might cause harm or injury." *Id.,* p 695. A similar rule prevails in the context of a claim that the manufacturer breached a duty to give a warning; viewed as either negligence or breach of an implied warranty, both theories "involve identical facts and require proof of exactly the same elements." *Smith v E R Squibb & Sons, Inc,* 405 Mich 79, 90; 273 NW2d 476 (1979). The common legal standard dispositive of liability is that of "reasonable care under the circumstances." *Id.* However, the defective nature of the product must, in fact, exist at the time of the manufacturer's relinquishment of possession, even if the subsequent malfunction and resultant injury occur much later. *Pippen v Denison Division of Abex Corp,* 66 Mich App 664, 669; 239 NW2d 704 (1976), lv den 399 Mich 823 (1977). See also *Scott v Allen Bradley Co,* 139 Mich App 665, 670-671; 362 NW2d 734 (1984). A defect may be proven by circumstantial evidence. *Holdsworth v Nash Mfg, Inc,* 161 Mich App 139, 148; 409 NW2d 764 (1987), lv den 429 Mich 872 (1987).

Specifically, plaintiffs' theory of recovery is that the press unexpectedly and spontaneously cycled for unknown reasons, but that this is a common and foreseeable occurrence of working with presses. Contending that Cincinnati should have designed and implemented more adequate safety devices, plaintiffs primarily relied on Cincinnati's failure to provide an interlocking barrier guard integrated into the clutch mechanism activating the cycling process of the press. Plaintiffs' expert witness opined that an interlocking barrier guard could have been included by Cincinnati as part of the design of the press and that, if it had been installed, an accident of the nature causing Reeves' injuries would have been rendered "virtually impossible."

Plaintiffs' theory, if supported by sufficient evidence, is viable under products liability law. "A product may be rendered unreasonably dangerous by the omission of a safety device. Furthermore, where an injury is reasonably foreseeable, the trier of fact must determine whether a safety device should have been put on the product by the manufacturer." *Scott, supra*, p 670.

Whether an alleged design defect is actionable under theories of negligence and implied warranty is decided with reference to the risk-utility balancing test. *Prentis, supra*. The precise burden imposed on the plaintiff by this test was delineated by the Supreme Court in *Owens v Allis-Chalmers Corp*, 414 Mich 413; 326 NW2d 372 (1982), a case affirming the trial court's directed verdict in favor of the manufacturer of a forklift. The plaintiff's decedent was fatally injured when he was ejected from the forklift, which collided with a post and then rolled over for reasons that were entirely unknown and unexplained at trial. The plaintiff's theory of design defect was the manufacturer's

omission of a driver restraint, e.g., a seatbelt, that would have minimized the decedent's injuries. Plaintiff's theory depended almost exclusively upon expert testimony for evidentiary support, and the Court's exhaustive review of that testimony led to its conclusion that the plaintiff failed to make a prima facie case:

> Our conclusion that the plaintiff did not present a prima facie case is based on the lack of evidence concerning both the magnitude of the risks involved and the reasonableness of the proposed alternative design. Although from the testimony of plaintiff's expert one might infer that a forklift rollover and the injuries resulting from being pinned under the overhead protective guard were foreseeable, neither his testimony nor any other evidence on the record gave any indication how likely such an event might be. In conjunction with this uncertainty, the record also produces no indication how the use of any of the driver restraints would affect a forklift operator's ability to do his or her job or the operator's safety in other circumstances. [*Id.,* pp 429-430.]

Additionally, the Court noted that particularly "where the magnitude of the risks is quite uncertain because it is dependent upon the unknown incidence of forklift rollovers, an examination of the effects of any proposed alternative design must bear a heavy burden in determining whether the chosen design was unreasonably dangerous." *Id.,* p 430. In arriving at its holding that the evidence presented by that plaintiff was insufficient, the Court emphasized the lack of evidence as to the effectiveness and feasibility of driver restraints and of the costs of the incorporation of restraints into the design.

Other cases illustrative of the approach taken in *Owens* have been decided by this Court. See *Kinzie*

*v AMF Lawn & Garden, Division of AMF, Inc,* 167 Mich App 528, 533-535; 423 NW2d 253 (1988), lv den 431 Mich 863 (1988); *Petto v The Raymond Corp,* 171 Mich App 688, 693-695; 431 NW2d 44 (1988), lv pending. In *Scott, supra,* a case where the contention of insufficient evidence was made in the context of the press manufacturer's failure to supply a guard as a safety device to protect a switch mechanism from being accidentally bumped, this Court stated:

> Allen Bradley next contends that Scott failed to present sufficient evidence to establish defective design according to *Owens v Allis-Chalmers Corp,* 414 Mich 413; 326 NW2d 372 (1982). *Owens* established that the plaintiff must present evidence concerning the magnitude of the risks involved and the reasonableness of any proposed alternative design. *Owens, supra,* p 432. Allen Bradley's expert testified that the company began producing switch guards sometime after 1955. Two guards were introduced at trial which cost approximately $1 each to produce. It was obvious that the proposed guards would not affect the worker's ability to perform his job. Allen Bradley's expert stated that the guards were developed to avoid accidental activation. Therefore, it is apparent that Allen Bradley was aware of the magnitude of the risks involved. Under the circumstances, we find that Scott introduced sufficient evidence to satisfy *Owens.* [139 Mich App 671.]

To summarize, a prima facie case of a design defect premised upon the omission of a safety device requires first a showing of the magnitude of foreseeable risks, including the likelihood of occurrence of the type of accident precipitating the need for the safety device and the severity of injuries sustainable from such an accident. It secondly requires a showing of alternative safety devices

and whether those devices would have been effective as a reasonable means of minimizing the foreseeable risk of danger. This latter showing may entail an evaluation of the alternative design in terms of its additional utility as a safety measure and its trade-offs against the costs and effective use of the product. See *Prentis, supra,* p 687, n 24.

In this case, the testimony provided by plaintiffs' expert witness can be summarized as follows: Unexpected, spontaneous cycling of a power press, such as that resulting in this accident, occurs for unknown reasons in spite of good maintenance. It is an inevitable consequence of the operation of presses, and it is well known that such cycling causes numerous serious injuries in workplaces. Prior to the 1950 manufacture of the press in this case, technical literature, primarily generated in England, documented the availability of an interlocking barrier guard that soon thereafter became the norm in England, although not in the United States. This guard has a mechanical component interlocking with the clutch that locks the press ram in place and makes it "virtually impossible" for the press to cycle if the operator's hands are in the way of the point of operation, i.e., the juncture where the cycling of the press causes the dies to come together. If the guard had been in place, the accident in this case would almost certainly have been avoided. This guard could have been installed on the press and could have been designed to be adjustable to the limited number of multiple purposes for which the press was designed. However, because the guard is integrated with the clutch mechanism, it is not practical for anyone other than the manufacturer to install the guard onto the mechanical working of the press. This pre-

cludes fitting the machine with this particular type of guard after the press is acquired.

This evidence is sufficient to raise a question of fact for the jury. Although plaintiffs do lack a statistical breakdown of the risks of injuries caused by presses with and without interlocking barrier guards or a cost-accounting analysis of the incremental added costs (in 1950) if the design had been altered to include the guard, there was considerable evidence of the reasonableness of the design—that power presses in general are unsafe because of unavoidable cycling, i.e., the magnitude of the risks, and that the alternative design, the installation of the guard, would have prevented plaintiffs' accident by precluding unexpected cycling of the press. In view of this evidence, we do not believe that statistical deficiencies in the expert testimony prevented plaintiffs from making a prima facie case.

Relying on *Villar v E W Bliss Co*, 134 Mich App 116; 350 NW2d 920 (1984), lv den 422 Mich 871 (1985), and *Bullock v Gulf & Western Mfg*, 128 Mich App 316; 340 NW2d 294 (1983), defendants argue that the grant of a directed verdict was proper because the duty of a manufacturer such as Cincinnati to install safety devices is vitiated when it sells an unassembled multiple purpose press to an employer owing a duty to its employees to provide a safe workplace. However, both *Villar* and *Bullock* are premised upon the principle that it is unforeseeable from the standpoint of the manufacturer how the employer will use a press designed to accommodate multiple purposes, thereby defeating any attempt to anticipate and protect against the specific unsafe application of the press by installing an appropriate guard in advance of its sale to the user. In the case at bar, plaintiffs' expert testified that an adjustable bar-

rier guard could have been designed and that this guard would have been functional under any of the limited number of applications for which the multiple purpose press was designed. Therefore, the holdings in *Villar* and *Bullock* are factually distinguishable.

We conclude that a rational trier of fact could find for plaintiffs on a claim based on factual allegations of negligent design of the press. Therefore, the grant of a directed verdict was erroneous.

We do agree with defendants that Cincinnati was under no duty to place warnings on the press of this open and obvious danger. See *Bullock, supra,* pp 322-323. In the event of retrial, the question of failure to warn need not be submitted to the jury.

To the extent that liability against Addy-Morand, the alleged seller of the press, is premised upon a breach of warranty resulting from a defective design attributable to Cincinnati, our holding reversing the directed verdict and remanding for trial is applicable to Addy-Morand as well as Cincinnati. See *Prentis, supra,* p 693 ("When proceeding under a theory of implied warranty, a design defect is established by proof that the product is not reasonably safe for the uses intended, anticipated, or reasonably foreseeable. . . . For the sale of a product defective in such respect, the seller may be answerable for breach of an implied warranty."). However, we find no evidence of independent negligence chargeable to Addy-Morand on the record.

Plaintiffs argue that the trial court erred by not excluding references to Reeves' entitlement to retirement benefits. Should this issue recur in a retrial, we admonish the parties to adhere to foundational requirements for admission of evidence of Reeves' entitlement to benefits for pur-

poses not prohibited by the collateral source rule. See *McMiddleton v Otis Elevator Co,* 139 Mich App 418, 429-432; 362 NW2d 812 (1984), modified 424 Mich 862 (1985); *Blacha v Gagnon,* 47 Mich App 168; 209 NW2d 292 (1973); *Gallaway v Chrysler Corp,* 105 Mich App 1, 7; 306 NW2d 368 (1981), lv den 413 Mich 853 (1982). Because a ruling of this nature is largely discretionary, determined as a function of factual circumstances prevailing at trial, we decline plaintiffs' invitation to set forth rigid parameters governing admission of evidence of retirement benefits in this case. However, we do not believe that the trial court abused its discretion by ruling below that such evidence, offered on the issue of how long Reeves would have worked before retirement if he had not sustained the disabling injury, was not excluded by the collateral source rule.

Reversed and remanded for trial.