Janet COLMAN, Plaintiff,

v.

**GATTO MACHINERY DEVELOPMENT CORPORATION, Defendant.**

No. 90–73841.

United States District Court,
E.D. Michigan, S.D.

July 7, 1992.

Stuart A. Fraser, Mt. Clemens, Mich., for plaintiff.

Dale L. Gudenau, Southfield, Mich., for defendant.

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Plaintiff Janet Colman filed her complaint in this case June 22, 1990, basing subject matter jurisdiction on diversity of citizenship and amount in controversy. Defendant Gatto Machinery Development Corporation ["Gatto"] filed the instant motion for summary judgment April 9, 1992. Plaintiff filed her response April 20, 1992. Pursuant to this court's May 6, 1992 order, Gatto filed a supplemental brief May 12, 1992; and plaintiff filed a supplemental brief May 14, 1992.

### FACTS

On December 8, 1989, plaintiff was injured while at work at Huron/St. Clair Metals. The injury allegedly occurred when plaintiff reached into the puller openings of a "cat-a-puller" machine manufactured and designed by Gatto.

Essentially, a cat-a-puller machine, also known as an extrusion or puller machine, is the last machine on a production line that pulls PVC plastic stripping that has been shaped and formed into side molding on automobiles. The PVC is eventually pulled down the line and cut to size. Prior to the PVC's arriving at the cat-a-puller machine, another machine in the production line removes any loose PVC from the stripping. Invariably, however, small threads of PVC, known as "stringers," remain on the stripping when it enters the cat-a-puller. Occasionally, some of the stringers would then get caught in the belt rollers of the cat-a-puller. These belt rollers are located at the entrance of the cat-a-puller with one on top of the other, rotating in opposite directions,

pressing against the PVC in order to pull it along the line of machines.

As plaintiff testified, when the stringers would become caught in the belt rollers, she would normally proceed to the back of the cat-a-puller and try to pick off the PVC without stopping operation.[1] Plaintiff testified that although she received no formal training regarding the removal of entangled PVC, she did see other employees doing the same thing; and in fact, her foreman, Gary West, was aware that she followed that procedure.[2]

On December 8, 1989, plaintiff was unable to pick off the PVC stringers from the back of the cat-a-puller. Plaintiff proceeded to the front of the cat-a-puller and stuck her hand into the area where the parts were fed. This resulted in her hand being caught between the belts pulling her right arm further into the machine. Even though the stop button and/or release handle were directly in front of plaintiff at that moment, plaintiff failed to use these emergency devices. Instead, plaintiff pushed a non-operational button that she thought would stop the entire line. The emergency button that had been designed into the machine by Gatto was never hooked up by plaintiff's employer. Plaintiff's co-workers came to the aid of plaintiff and stopped the machine.

When asked why plaintiff did not stop the cat-a-puller before she attempted to remove the PVC, plaintiff replied that her employer was extremely sensitive to shutdowns which resulted in the increased amount of scrap and reduced production.[3] However, there was nothing that physically prevented plaintiff from stopping the cat-a-puller.

The cat-a-puller in question was designed, manufactured and sold to Huron/St. Clair Metals in 1979. The cat-a-puller was in operation for several years without incident or difficulty. Plaintiff admits to working on the cat-a-puller approximately 50 shifts prior to the accident with-

1. Colman dep. at 30.

2. *Id.* at 29, 31 & 60.

3. *Id.* at 54–55.

out incident or difficulty.[4] Further, plaintiff has testified that she received no formal training or instruction from her employer.[5]

Additionally, the cat-a-puller in question was modified by Huron/St. Clair Metals in several respects. The entry opening had been widened; the guide rollers had been removed. Additional guide rollers had been added inside the framework of the opening. Also, as noted above, a red, mushroom stop button had never been connected by Huron/St. Clair Metals. According to defendant, Huron/St. Clair Metals never contacted Gatto about the set up or maintenance of the cat-a-puller. Finally, it appears that at least eight caution stickers and one emergency stop warning sticker had been painted over by the employer.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citation omitted). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact: rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed. R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission of issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701

---

4. *Id.*

5. *Id.* at 29.

(6th Cir.1991). The evidence itself need not be the sort admissable at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

## ANALYSIS

Plaintiff has brought this products liability action against Gatto for an alleged defect in the design of its cat-a-puller on the theories of negligence and breach of warranty.[6] In order to prevail, plaintiff must show that the "alleged defect in the design of the product created an unreasonable risk of foreseeable injury." *Prentis*, 421 Mich. at 694, 365 N.W.2d 176 (citing *Elsasser v. American Motors Corp.*, 81 Mich.App. 379, 384, 265 N.W.2d 339 (1978)). In other words, plaintiff must show that "the manufacturer was under a duty to use reasonable care to design a product that was reasonably safe for its intended, anticipated, or reasonably foreseeable uses." *Prentis*, 421 Mich. at 694, 365 N.W.2d 176 (citing *Dooms v. Stewart Bolling & Co.*, 68 Mich.App. 5, 14, 241 N.W.2d 738 (1976)). A *prima facie* case of a design defect premised upon the omission of a safety device requires

> (1) a showing of the magnitude of foreseeable risks, including the likelihood of occurrence of the type of accident precipitating the need for the safety device and the severity of injuries sustainable from such an accident, and
>
> (2) a showing of alternative safety devices and whether those devices would have been effective as a reasonable means of minimizing the foreseeable risk of danger.[7]

*Reeves v. Cincinnati, Inc.*, 176 Mich.App. 181, 187–88, 439 N.W.2d 326 (1989). This standard applies both to a negligence claim and a breach of warranty claim. *Id.* at 184, 439 N.W.2d 326.

First, it appears that the cat-a-puller machine in question lacked certain safety devices. Plaintiff contends that the lack of safety devices is attributable to Gatto's negligent design. Gatto claims that plaintiff's employer, Huron/St. Clair Metals, was responsible for placing adequate safety devices, *i.e.*, *point of operation guarding*, into the cat-a-puller system. Gatto cites *Villar v. E.W. Bliss Co.*, 134 Mich. App. 116, 120–21, 350 N.W.2d 920 (1984), for the proposition that if the cat-a-puller were to be used as a part of a production line rather than independently, then the duty to install the safety devices rested with Huron/St. Clair Metals and not Gatto. This court disagrees with Gatto's reading of *Villar*.

In *Villar*, the plaintiff was injured by a press manufactured by the defendant. When the defendant sold the press to the plaintiff's employer, there was neither a power source nor a single die attached. The press in *Villar* could be operated only when integrated into a powered production line or a complex of machines. Further, the press served a multitude of purposes for plaintiff's employer unknown to the defendant. In the condition that it was sold, and for the purposes that it was sold, the press "was incapable of injuring anyone in the way that plaintiff had been injured." *Id.* at 121, 350 N.W.2d 920. Therefore, the *Villar* court held that the defendant manufacturer was not liable for the absence of safety devices because

> the specific use to which plaintiff's employer put the machine was not *foreseeable* without *some* evidence that defendant knew or should have known of the purchaser's unsafe use.

*Id.* (emphasis in original).

■ In the instant case, Gatto has not sufficiently shown that the cat-a-puller was

---

**6.** The negligent design theory "generally focuses on the defendant's conduct, requiring a showing that it was unreasonable, while warranty generally focuses upon the fitness of the product, irrespective of the defendant's conduct." *Prentis v. Yale Mfg. Co.*, 421 Mich. 670, 692, 365 N.W.2d 176 (1984) (citing *Smith v. E.R. Squibb & Sons*, 405 Mich. 79, 98–99, 273 N.W.2d 476 (1979) (Levin, J., dissenting)).

**7.** This latter prong may entail an evaluation of the alternative design in terms of its additional utility as a safety measure and its trade-offs against the costs and effective use of the product. *See Prentis*, 421 Mich. at 687 n. 24, 365 N.W.2d 176.

inoperable and incapable of functioning independently from other machines. The cat-a-puller may indeed be part of a production line. Further, the cat-a-puller's profitable operation may be totally dependent upon raw materials generated from other machines in the line. However, Gatto has not shown that the cat-a-puller lacked its own power source or other devices necessary to its operation. The *Villar* press depended totally upon its incorporation into another machine or machines. The cat-a-puller in question could very well operate standing alone. Therefore, there is a genuine issue of material fact whether Gatto or Huron/St. Clair Metals was responsible for the installation of certain safety devices.

■ Gatto next contends that Huron/St. Clair Metals' intervening and unforeseeable gross negligence exacerbated the risks associated with the cat-a-puller. Specifically, Gatto points to the company policy of running the cat-a-puller while removing the accumulated PVC, failing to train employees in the operation of the cat-a-puller, and modifying the cat-a-puller.

As to the modifications, namely the removal of certain rollers at the mouth of the cat-a-puller, defendant's own expert has stated that

> the rollers themselves are not a form of a guard, they are intended to be a stop when you're kneading the product in, not going beyond that. You'd have to go around those rollers to get your hand in or—. . . .

Preiato dep. at 49 (deponent cut off in mid-sentence). Unlike plaintiff's contention, this does not conclusively show that the rollers were not guards. However, it does leave at least a genuine issue of material fact whether the modifications were an intervening cause "which actively operate[d] in producing harm to another after the actor's negligent act or omission ha[d] been committed." *McMillian v. Vliet*, 422 Mich. 570, 576, 374 N.W.2d 679 (1985) (citing Restatement (Second) of Torts § 441).

■ Gatto's next contention regarding Huron/St. Clair Metal's policy of running the cat-a-puller while removing the accumulated PVC is also incorrect. The Michigan Supreme Court has recognized that manufacturers may be liable for "foreseeable misuse" of their products in addition to mere uses. *See Antcliff v. State Employees Credit Union*, 414 Mich. 624, 638, 327 N.W.2d 814 (1982) (citing *Gronlie v. Positive Safety Mfg. Co.*, 50 Mich.App. 109, 212 N.W.2d 756 (1973); *Byrnes v. Economic Mach. Co.*, 41 Mich.App. 192, 200 N.W.2d 104 (1972)). It is not beyond belief that a cat-a-puller operator would fail to shut down the machine before removing the PVC from the rollers, as a shut-down of the cat-a-puller would cause as much as a one-half hour delay in production. This may not be a wise practice, but it is not unforeseeable.

■ Further, Gatto's argument that Huron/St. Clair Metals failure to train employees in the operation of the cat-a-puller was also an intervening cause of the injury was not addressed by plaintiff. However, this argument is akin to the previous argument advanced by Gatto. It is foreseeable that Huron/St. Clair Metals would fail to train its employees properly.

■ Finally, Gatto states that it placed eight caution stickers and one emergency warning sticker on the cat-a-puller. Gatto then contends that plaintiff's employer painted over or otherwise obscured these labels. Gatto's supplemental brief states that the labels read

> CAUTION—DO NOT REMOVE THIS OR ANY OTHER GUARD UNTIL THE MACHINE IS ELECTRICALLY DISCONNECTED AND ALL MACHINE MOTION STOPS.

Defendant's supplemental br. at 3 & ex. D. It is true that a proper warning obscured by plaintiff's employer might be sufficient evidence with which to grant Gatto's motion for summary judgment. *See Vink v. Beardsley*, 94 Mich.App. 225, 228, 288 N.W.2d 389 (1979); *see also Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 493 (3d Cir.1985); *Eagle–Picher Indus. v. Balbos*, 84 Md.App. 10, 578 A.2d 228, 257 n. 24 (1990), *aff'd in relevant part*, 326 Md. 179, 604 A.2d 445 (1992); *Hoglund v. Raymark Indus.*, 50 Wash.

App. 360, 749 P.2d 164, 170 (1987); *cf. Rusin v. Glendale Optical Co.*, 805 F.2d 650, 654 (6th Cir.1986) (intimating that employer's removal of warning labels absolves manufacturer of liability).

■ However, in *Vink*, the warning placed on the leaf blower by defendant Toro read "CAUTION—stop engine before removing blower intake or blower discharge." *Vink*, 94 Mich.App. at 228, 288 N.W.2d 389. The employer had removed the labels, and plaintiff had removed the blower intake without stopping the engine. In the instant case, the warning stickers had no connection with the accident in question. The guards were already off the cat-a-puller, allegedly taken off by plaintiff's employer. The warning stickers did not necessarily place plaintiff on notice that the mouth of the machine was dangerous. Even if plaintiff's employer had painted over the labels, these labels would have been insufficient evidence upon which to grant of summary judgment in favor of Gatto.[8]

### ORDER

For the foregoing reasons, it is hereby ORDERED that defendant's motion for summary judgment is DENIED.

SO ORDERED.

---

**8.** It must be noted that Gatto has failed to raise the "open and obvious danger" rule as expressed in *Glittenberg v. Doughboy Recreational Indus.*, 436 Mich. 673, 686, 462 N.W.2d 348 (1990) (Griffin, J.). *See also Kirk v. Hanes Corp. of N.C.*, 771 F.Supp. 856, 858 (E.D.Mich.1991); *Raines v. Colt Indus.*, 757 F.Supp. 819, 824 (E.D.Mich. 1991). This rule states that "[a] manufacturer is under no duty 'to render a machine or other article more safe as long as the danger to be avoided is obvious and patent to all.'" *Kirk*, 771 F.Supp. at 858 (quoting *Glittenberg*, 436 Mich. at 686, 462 N.W.2d 348 (Griffin, J.)). This rule only applies to a "simple tool," and not a complex mechanism. *See Kirk*, 771 F.Supp. at 858. Whether the cat-a-puller is a complex mechanism or a simple tool is not a question before this court, and will not be addressed.