*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0007P (6th Cir.)
File Name: 01a0007p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

RANDY PECK; SHARON PECK,
    *Plaintiffs-Appellants,*

    *v.*

BRIDGEPORT MACHINES, INC.;
ROMI COMPANY,
    *Defendants-Appellees.*

No. 99-2024

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 97-70653—Arthur J. Tarnow, District Judge.

Argued: September 12, 2000

Decided and Filed: January 8, 2001

Before: JONES, RYAN, and CLAY, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Patrick J. Burkett, SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, Southfield, Michigan, for Appellants. Barry B. Sutton, HARVEY & KRUSE, Troy, Michigan, for Appellees. **ON BRIEF:** Patrick J. Burkett, SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, Southfield, Michigan, for Appellants. Barry B. Sutton,

1

Dennis M. Goebel, HARVEY & KRUSE, Troy, Michigan,
for Appellees.

RYAN, J., delivered the opinion of the court.  JONES, J.,
concurred in the disposition of the product design claim, and
concurred in the result on the issue of summary judgment on
the failure to warn claim.  CLAY, J. (p. 9), delivered a
separate concurring opinion.

---

**OPINION**

---

RYAN, Circuit Judge.  The plaintiff, Randy Peck, brought
a products liability action in the federal court to recover
damages for personal injuries he sustained while working on
a lathe that was designed by ROMI Company and sold by
Bridgeport Machines, Inc.  Peck alleged that the lathe had a
design defect and that the defendants breached their duty to
warn of the machine's alleged dangerousness.  The district
court granted summary judgment for the defendants, finding
that Peck could not establish the defendants' liability under
Michigan's risk-utility test for design defect claims and, for
other reasons, failed to make out a failure to warn claim.
Peck appealed and we now affirm the district court's
judgment.

## I.

ROMI designed the lathe.  It has an on/off switch that
energizes the machine and a lever that puts the lathe into gear.
The lever is operated by pushing it horizontally and then
moving it vertically upward to make the lathe go forward, or
downward to put it in reverse.  On November 22, 1995,
Randy Peck and two other men were attempting to load a long
metal tube weighing approximately 150 pounds onto the
lathe.  The lathe was inadvertently activated by one of the
other men and Peck's hand was caught in the lathe and he was
seriously injured.  Peck sued Bridgeport Machines in Jackson

County Michigan Circuit Court. Bridgeport removed the case to the United States District Court for the Eastern District of Michigan. Thereafter, Peck added his spouse, Sharon, as a plaintiff, and ROMI, as a defendant.

At the hearing in district court on the defendants' motion for summary judgment, each party's case was presented mainly through deposition testimony. Peck presented the deposition testimony of his expert, Herbert Ludwig, and ROMI offered the deposition testimony of its expert, Ayrton Tortelli, who designed the machine. The district court granted the defendants' motion for summary judgment on the design defect claim, finding that at trial the plaintiff would be unable to prove that an available and practicable reasonable alternative design of the lathe would have reduced the foreseeable risk of harm posed by the product, one of six elements of Michigan's risk-utility test for proving defect design, as established in *Hollister v. Dayton Hudson Corp.*, 201 F.3d 731 (6th Cir.), *cert. denied*, No. 99-1927, 2000 WL 719538, *and cert. denied*, No. 00-37, 2000 WL 949122 (2000). The district court also granted the motion for summary judgment on the failure to warn claim on the ground that Ludwig testified in his deposition that it was not necessary to turn off the machine to operate or load it safely, and because the court found it could not rely on Ludwig's subsequent inconsistent affidavit.

## II.

We are handicapped in our review of this case because the district court did not prepare a written opinion explaining its reasoning for granting summary judgment. Instead, we have only the transcript of the summary judgment hearing in which the district court announced its decision from the bench. Consequently, we are required to comb through the transcript of the summary judgment hearing, including an extensive discussion between the court and counsel, in order to find the passage wherein the district court judge explains from the

bench his decision to grant summary judgment and its legal basis.

This reviewing court, and more importantly, the parties, are much better served when, as is the custom in this circuit, the district court prepares a written opinion explaining its ruling and the reasoning, factual and legal, in support, especially when the ruling disposes of the case in a final judgment.

This court reviews *de novo* a district court's decision to grant summary judgment. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## A.  The Design Defect Claim

Michigan has adopted what its courts have come to call the "risk-utility" test for determining whether a plaintiff has made out a case for a product liability claim based upon a claimed design defect. *Prentis v. Yale Mfg. Co.*, 365 N.W.2d, 176, 186 (Mich. 1984). In *Owens v. Allis-Chalmers Corp.*, 326 N.W.2d 372 (Mich. 1982), the Michigan Supreme Court stated the test as follows: "Our conclusion that the plaintiff did not present a prima facie case is based on the lack of evidence concerning both the magnitude of the risks involved and the reasonableness of the proposed alternative design." *Id.* at 378-79. This test was recently elaborated by Judge Feikens in *Hollister v. Dayton Hudson Corp.*, 5 F.Supp.2d 530 (E.D. Mich. 1998). Judge Feikens restated this test relying primarily upon two other design defect cases, *Reeves v. Cincinnati, Inc.*, 439 N.W.2d 326 (Mich. Ct. App. 1989), and *Owens*, 326 N.W.2d 372. When *Hollister* was appealed to this court, we reversed the judgment in part, but adopted Judge Feikens's deconstructed formulation of Michigan's risk-utility test. *Hollister*, 201 F.3d at 738. Under this test, to survive a motion for summary judgment, the plaintiff must produce evidence showing:

---

## CONCURRENCE

---

CLAY, Circuit Judge, concurring. I concur in the result reached by the majority opinion on the product liability claim in denying that there was a design defect with respect to the lathe. However, contrary to the majority opinion, for the reasons expressed by the district court, I would find that Plaintiff made a *prima facie* case of design defect as to elements one, two, three, and four of the *Hollister* case test, but failed to do so with respect to elements five and six. I concur in the reasoning and disposition reached by the majority opinion on the failure to warn claim.

defendants if he had any other opinions, Ludwig said he did not believe so.  Thus, on the whole, Ludwig's testimony amounted to a virtual admission that there was no duty to warn.  Moreover, although Tortelli admitted that ROMI knew of the *possibility* for inadvertent activation, he also stated that the lathe had been designed in a way so that this would not happen.

After giving his deposition testimony, Ludwig signed an affidavit in which he said that a reasonable and prudent lathe designer should provide warnings if the design did not guard against inadvertent activation.  However, Ludwig's affidavit is not cognizable for purposes of the summary judgment decision because it was made after the motion for summary judgment was filed and because it contradicts his earlier deposition testimony.  According to *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453 (6th Cir. 1986):

> A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony.

*Id.* at 460.

In the deposition, Ludwig stated that he had no criticism of ROMI for not putting a warning on the lathe to turn off the power and testified that he had *no* other opinions.  But in his later affidavit, Ludwig states that it is the duty of a reasonable and prudent machine designer to give warnings.  This plainly contradictory affidavit statement is not admissible, and thus Peck did not make out a claim on the failure to warn theory.

### III.

The district court's judgment is **AFFIRMED**.

(1)  that the severity of the injury was foreseeable by the manufacturer;

(2)  that the likelihood of occurrence of her injury was foreseeable by the manufacturer at the time of distribution of the product;

(3)  that there was a reasonable alternative design available;

(4)  that the available alternative design was practicable;

(5)  that the available and practicable reasonable alternative design would have reduced the foreseeable risk of harm posed by defendant's product; and

(6)  that omission of the available and practicable reasonable alternative design rendered defendant's product not reasonably safe.

*Id.*

The district court found that Peck had made a *prima facie* case of design defect as to elements 1, 2, 3, and 4 of the *Hollister* case test, but had not established elements 5 and 6; that is, had not shown (5) that the available and practicable reasonable alternative design would have reduced the foreseeable risk of harm posed by defendant's product; and (6) that omission of the available and practicable reasonable alternative design rendered defendant's product not reasonably safe. *See Hollister*, 5 F.Supp.2d at 535.  We agree with the district court that the plaintiff failed to make out a justiciable case for elements 5 and 6, but we think, contrary to the district court thinking, that the plaintiff failed to establish elements 1, 2, 3, and 4 as well.

Peck is unable to meet elements one and two.  These elements derive from the first part of the *Owens* test; that the plaintiff must demonstrate the "magnitude of the risks

involved." *Owens*, 326 N.W.2d at 378. Peck offered virtually no evidence regarding these elements. In fact, Peck's expert, Ludwig, testified that he had never heard of similar accidents occurring with lathes and did not know the probability of a similar accident happening. Although Tortelli, ROMI's expert, testified in his deposition that the designers knew of the risk of inadvertent activation, he said they chose a design that would prevent this from happening.

Peck has also failed to establish elements three and four. These elements derive from the second part of the *Owens* test, that the plaintiff must demonstrate the "reasonableness of the proposed alternative design." *Id.* at 379. Ludwig testified that he would have designed the lathe differently, with a "safer" lever shift mechanism, but that he had never fabricated such a design and, in fact, had never seen his proposed design used on a lathe anywhere. He did indicate that he had seen his proposed design used on "cherry pickers." Tortelli testified that he did not know whether such a design was feasible, but if it were, it would probably entail an increase in cost of approximately 15%; but he was not sure. Under the Michigan risk-utility test set forth in *Prentis*, an expert who testifies that a product could have been designed differently, but who has never made or seen the alternative design he proposes, and therefore has no idea of its feasability, utility, or cost, does not make out a *prima facie* case that a reasonable, practicable, and available alternative design was available.

The district court found that Peck could not establish elements five and six, and we agree. First, there is no evidence of an available and practicable reasonable alternative design. Second, even if there were some evidence that the cherry picker design Ludwig has seen was available, practicable, and reasonable, Peck has not demonstrated that it would reduce the foreseeable risk of harm posed by the lathe. Although Ludwig has testified that the alternative design would have prevented this particular accident from happening, he offered no experiential basis for that opinion

and did not testify as to whether the design would have been safer overall.

The district court correctly concluded that the plaintiff could not, on the basis of the evidence submitted to the court, establish an actionable claim for design defect.

### B. The Failure to Warn Claim

"Under Michigan law, the manufacturer of a product has a duty to warn of dangers associated with the intended uses or reasonably foreseeable misuses of its product." *Portelli v. I.R. Constr. Prods. Co.*, 554 N.W.2d 591, 596 (Mich. Ct. App. 1996). In order to establish a claim that a product is defective due to a failure to warn, a plaintiff must show that a manufacturer or seller:

(1) had actual or constructive knowledge of the alleged danger,

(2) had no reason to believe that consumers would know of this danger, and

(3) failed to exercise reasonable care to inform consumers of the danger.

*Hollister*, 201 F.3d at 741.

In addition, in a negligence action, a plaintiff must establish causation and damages. Where causation is lacking, the question of a duty to warn need not be addressed. *Fisher v. Kawasaki Heavy Indus., Ltd.*, 854 F.Supp. 467, 472 (E.D. Mich. 1994).

We agree with the district court that Peck failed to make out this claim. Ludwig testified that he had no criticism of ROMI for not putting a warning on the machine to turn the power off. He also admitted that the power was not usually turned off when the lathe was being loaded. At the conclusion of his deposition when Ludwig was asked by the