**Freya MCKETHAN–JONES,**
**Plaintiff–Appellant,**

v.

**OHIO DEPARTMENT OF HEALTH**
**et al., Defendants–Appellees.**

**No. 00–3084.**

United States Court of Appeals,
Sixth Circuit.

March 27, 2001.

Before BOGGS and MOORE, Circuit Judges; COHN,* District Judge.

OPINION

MOORE, Circuit Judge.

Plaintiff Freya McKethan–Jones ("Jones") appeals the district court's decision granting the Ohio Department of Health ("ODH") summary judgment with respect to Jones's Title VII claims of retaliation and hostile work environment. Jones also appeals the district court's dismissal of her First Amendment retaliation claim, which she brought pursuant to 42 U.S.C. § 1983. In her First Amendment retaliation claim, Jones attempted to sue the following ODH supervisors in their individual capacities: William Ryan, former Director of ODH; Michael Eberly, Deputy Director for Administration; William Lee, Chief of Personnel; and David White, Labor Relations Manager.

* The Honorable Avern Cohn, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

For the reasons stated below, we AFFIRM the district court's decision granting summary judgment to the defendants and dismissing the case.

## I. BACKGROUND

Plaintiff Freya McKethan–Jones is a black female employed by ODH as a data systems manager. Jones has been employed with ODH since 1986, and is responsible for overseeing the purchasing and mail management units in ODH's Office of Financial Affairs. On July 16, 1998, Jones filed a complaint seeking injunctive relief and damages against ODH and its above-mentioned supervisory employees. As Jones details in her complaint, the incident that sparked this lawsuit was the decision by Michael Eberly, Jones's supervisor at ODH, to relocate several of the units within the Office of Financial Affairs. As part of the relocation, all of the ODH departments on the fourth floor with the exception of Accounting were forced to move their offices, yet those departments all remained on the fourth floor following the move.

Jones opposed the relocation plan chosen by Eberly, claiming that it would effectively segregate all of the minority employees of the Office of Financial Affairs into one corner of the fourth floor. When Eberly refused to change his mind and went ahead with the move, Jones filed a charge of discrimination against Eberly with the Ohio Civil Rights Commission ("OCRC") on June 9, 1997. Following her OCRC filing, Jones claims that Eberly and other ODH administrators engaged in a series of retaliatory actions, most notably an investigation into whether the amount of accrued vacation, personal, and sick leave time that Jones had taken over a six-

month period was consistent with the bi-weekly time forms she signed at the end of each pay period. ODH uses bi-weekly time forms to log the number of hours that should be deducted from an employee's accrued leave time over the course of a year. The investigation revealed that while Jones had taken leave on July 2 and 3, 1997, the bi-weekly time form which she signed at the end of this pay period stated that she was at work on those days. As a result, she was paid for hours she did not work and for which she did not take leave. Following this investigation, Jones was suspended for five days without pay for signing and failing to correct an inaccurate bi-weekly time form.

Following this alleged retaliatory conduct, Jones filed suit in the United States District Court for the Southern District of Ohio, alleging, *inter alia,* violations of her equal protection, due process, and First Amendment rights pursuant to 42 U.S.C. §§ 1981 and 1983. Jones also alleged that ODH and the named supervisors discriminated against her on account of her race in violation of Title VII of the 1964 Civil Rights Act and Ohio Rev.Code § 4112.99.

Following defendants' Rule 12(b)(6) motion, the district court dismissed Jones's First Amendment retaliation claim because her "complaints that she was the victim of racial discrimination in her employment [were] not protected speech." Joint Appendix ("J.A.") at 53 (D.Ct.Order, Dec. 23, 1998). The court also dismissed Jones's § 1983 due process claim against the named ODH administrators. The court declined to dismiss the remainder of Jones's claims.

On July 29, 1999, the defendants moved for summary judgment on Jones's remaining claims. On December 9, 1999, the district court granted defendants' motion for summary judgment with respect to all of Jones's remaining claims. Jones's appeal to this court followed. On appeal,

Jones raises the following three issues: 1) that the district court erred in dismissing her First Amendment retaliation claim; 2) that the district court erred in granting summary judgment to ODH on her Title VII retaliation claim; and 3) that the district court erred in granting summary judgment to ODH on her hostile work environment claim.

## II. ANALYSIS

### A. Standard of Review

This court reviews *de novo* a district court's decision to grant summary judgment. *Peck v. Bridgeport Machs., Inc.,* 237 F.3d 614, 617 (6th Cir.2001). The moving party, ODH, has the burden of establishing that there are no genuine issues of material fact, and that it is entitled to judgment as a matter of law. *Id.* A dispute over a material fact cannot be "genuine" unless a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing the district court's decision to grant summary judgment, this court must view all evidence in the light most favorable to the nonmoving party. *Weeks v. Portage County Executive Offices,* 235 F.3d 275, 278 (6th Cir.2000).

### B. Jones's Title VII Retaliation Claim

Jones alleges that ODH engaged in the following retaliatory conduct after she decided to file a discrimination charge with the OCRC:

1) ODH's decision, initially made by Michael Eberly, to move Jones's department to a different area of the fourth floor;

2) Eberly's allegedly rude treatment of Jones at a July 22, 1997 office meeting;

3) ODH's investigation of her time and attendance records and the subsequent five-day suspension issued to her for falsely certifying and failing to correct her bi-weekly time form; and

4) Allegedly unfavorable job performance evaluations given to her in 1998 and 1999.[1]

To establish a prima facie case of retaliation, Jones must show the following: "(1) that she engaged in protected activity; (2) that defendant knew of this exercise of her protected rights; (3) that defendant consequently took an employment action adverse to plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Fenton v. HiSAN, Inc.*, 174 F.3d 827, 831 (6th Cir.1999). If Jones makes out her prima facie case, then the burden shifts to ODH "to articulate a legitimate, nondiscriminatory reason for the adverse action. The plaintiff may rebut defendant's 'legitimate' action by demonstrating the articulated reason was a mere pretext for discrimination." *Jackson v. Pepsi–Cola, Dr. Pepper Bottling Co.*, 783 F.2d 50, 54 (6th Cir.), *cert. denied*, 478 U.S. 1006, 106 S.Ct. 3298, 92 L.Ed.2d 712 (1986).

There is no dispute as to the first element of Jones's prima facie case, as she engaged in protected activity by filing a discrimination charge against ODH. As for the second element, ODH does not contend that it did not know of Jones's filings before the alleged retaliatory conduct occurred. There are problems, however, in Jones's attempts to establish the third and fourth elements of the prima facie case.

■ The third element Jones must show is that ODH took an adverse employment action following her protected activity.

This circuit has noted the following requirements for establishing an adverse employment action:

[A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir.1999) (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir.1993)). Aside from Jones's five-day suspension without pay, none of the alleged instances of retaliatory conduct is severe enough to meet this circuit's standard for an adverse employment action. However, following this circuit's guidance in *Hollins*, 188 F.3d at 662, we hold that Jones's suspension without pay does constitute an adverse employment action. *Hollins* states that an adverse employment action can be characterized by a "decrease in wage or salary" or "a material loss of benefits[,]" and Jones's five-day suspension, without pay, clearly amounts to an adverse employment action under these standards. *Id.* (quoting *Crady*, 993 F.2d at 136).

■ Because Jones has shown that ODH's decision to suspend her without pay for five days was an adverse employment action, she must now show that there was a causal connection between her filing charges with the OCRC and this adverse employment action. This circuit has stat-

---

1. At oral argument, Jones's attorney stated that Eberly's refusal to approve Jones's vacation leave for July 15–17, 1997 was not part of plaintiff's Title VII retaliation claim. Rather, Jones's attorney asked that it be considered, along with the other alleged retaliatory conduct mentioned above, as part of Jones's Title VII hostile work environment claim.

ed the following with respect to the causation element of the prima facie case:

> In order to show a causal connection, a plaintiff must produce sufficient evidence from which an inference can be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action. Although no one factor is dispositive in establishing a causal connection, evidence that the defendant treated the plaintiff differently from identically situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation. In addition, the burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met.

*Allen v. Michigan Dep't of Corr.*, 165 F.3d 405, 413 (6th Cir.1999) (internal citations omitted).

Once the plaintiff meets this relatively easy burden of showing causation, she has established her prima facie case. *Fenton,* 174 F.3d at 831. Under the *McDonnell Douglas* framework, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for taking the adverse employment action. *Cline v. Catholic Diocese,* 206 F.3d 651, 666 (6th Cir.2000). The defendant's burden is one of production, not proof, and to meet this burden the defendant's proffered reason for taking the adverse employment action " 'must be legally sufficient to justify a judgment for the defendant.' " *Id.* (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 255, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

If the defendant satisfies its burden of production, the production burden shifts back to the plaintiff, who must then show that the defendant's stated reason for taking the adverse employment action is pretextual (*i.e.,* it is not the true reason for the employment action). *Id.* To do this, the plaintiff must show, by a preponder-

ance of the evidence, either that the adverse employment action was motivated by a discriminatory reason rather than the defendant's proffered legitimate reason, or that the defendant's justification for its adverse employment decision is " 'unworthy of credence.' " *Id.* at 667 (quoting *Burdine,* 450 U.S. at 256).

The legitimate, non-discriminatory reason proffered by the defendants for suspending Jones was that Jones certified and thereafter failed to correct an inaccurate bi-weekly time form which indicated that she was at work for two days, when in fact she had taken time off. By signing and failing to correct this inaccurate time form, Jones was effectively paid for time she did not work and for which she did not take leave.

Even if we assume that Jones did make out her prima facie case for retaliation, she has failed to bring forth any viable evidence of pretext. Jones first points to the bi-weekly time forms of several other employees at ODH, which she claims show that, while she was the only employee disciplined, she was not the only employee to certify an inaccurate time form. While these time forms do indicate that alterations subtracting leave time were made after employees had signed off on the forms for a particular pay period, thus indicating that the employee had signed an inaccurate time form, in all of these cases, corrections were made to account for the leave taken in the very next pay period, thus ensuring that the employees did not receive an economic benefit by failing to account for leave taken. Jones, however, never attempted to correct the error in her bi-weekly time form, and even insisted that her time form was accurate when she was questioned by David White, almost four months after the fact. (White Dep. Vol. I, at 39).

The evidence also shows that Jones was not the only employee whose time records

were investigated by the defendants. When the investigation was initiated, all of the employees who reported their leave requests directly to Eberly, not just the plaintiff, had their bi-weekly time forms examined for discrepancies between the leave they had requested and the leave they had officially deducted on their bi-weekly time forms. Aside from a thirty-minute error in one employee's bi-weekly time form, Jones's sixteen hours of unaccounted leave was the only discrepancy uncovered in the investigation of Eberly's underlings.

Furthermore, Jones was not the only employee disciplined by ODH Director Ryan as a result of this incident. Eberly, Jones's supervisor, was given a written reprimand for approving the inaccurate bi-weekly time form that Jones had signed. Director Ryan explained that the reason Eberly was only given a written reprimand, as opposed to a suspension, was that, unlike Jones, he did not receive an economic benefit as a result of his error. Ryan also believed that because the employee signing the bi-weekly time form, and not the supervisor, is most aware of when she was and was not working, she should be held more responsible when an error is made.

Jones simply has not proffered any significant evidence that would lead a reasonable factfinder to question the validity of ODH's non-discriminatory reason for taking this adverse employment action.[2] Thus, viewing all the evidence in the light most favorable to Jones, we believe that no reasonable jury could find that Jones has

shown, by a preponderance of the evidence, that ODH's reason for suspending her was not the true reason for the adverse employment action. Accordingly, we AFFIRM the district court's decision granting summary judgment to ODH with respect to Jones's retaliation claim.

## C.  Jones's First Amendment Retaliation Claims

■ Jones next claims that, based on the same alleged conduct, the defendants retaliated against her for speaking out on the racially segregative effects of Eberly's proposed office move, thus violating her First Amendment free speech rights. For a public employee to establish a prima facie case of First Amendment retaliation pursuant to 42 U.S.C. § 1983, she must demonstrate:

> (1) that [she] was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused [her] to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of [her] constitutional rights.

*Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir.2000). In addition, the public employee must show that her speech touched on matters of public concern, and "the employee's interest in commenting upon matters of public concern must be found to outweigh the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* (quotation omitted). If the plaintiff can make out her prima facie

---

2.  At oral argument, Jones's lawyer pointed to the testimony of Ruth Manuel, an African-American human resources administrator at ODH, as the best evidence of pretext in this case. Manuel testified that, contrary to her expectations, she was not consulted when the decision was made to suspend Jones. A look at the broader scope of Manuel's testimony, however, reveals that this was not an isolated incident in which she was not consulted. Rather, the comment was made in the context of her more general dissatisfaction with the extent of her involvement in matters of this type. We do not see how Manuel's testimony discredits ODH's proffered reason for the adverse employment action.

case, the defendants then have the burden of showing, by a preponderance of the evidence, that they "would have taken the same action even in the absence of the protected conduct." *Id.* (quotation omitted).

The district court granted the defendants' motion to dismiss Jones's First Amendment retaliation claim, stating that "[p]laintiff's complaints that she was the victim of racial discrimination in her employment are not protected speech." J.A. at 53 (D.Ct.Order, Dec. 23, 1998). Jones then attempted to amend her complaint to show that her speech also touched on broader concerns of racial imbalance within ODH, as opposed to simply her own experiences of discrimination. J.A. at 121 (Pl.'s Second Am. Compl.). The district court apparently refused to consider these additional facts, and it once again dismissed Jones's First Amendment retaliation claim. J.A. at 126, 131 (D.Ct.Order, June 22, 1999).

■■■ Federal Rule of Civil Procedure 15(a) states that leave to amend a party's pleading should "be freely given when justice so requires." The district court, by refusing to grant leave to amend the original complaint concerning the First Amendment claim, must implicitly have decided that such a claim was futile. While this court ordinarily reviews a district court's refusal to grant leave to amend a complaint for an abuse of discretion, when the district court refuses to grant leave to amend based on the legal conclusion that an amendment would be futile, we review the district court's decision *de novo.* *Hahn v. Star Bank,* 190 F.3d 708, 715–16 (6th Cir.1999), *cert. denied,* 529 U.S. 1020, 120 S.Ct. 1423, 146 L.Ed.2d 314 (2000). While we disagree with the district court's implicit holding that a public employee's speech regarding racial segregation and the need for racial balance does not touch on matters of public concern, *see Connick*

*v. Myers,* 461 U.S. 138, 148 n. 8, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), we affirm, on different grounds, the district court's dismissal of Jones's First Amendment retaliation claim as futile. As in the Title VII retaliation context, Jones's proffered evidence has not cast into doubt the defendants' legitimate non-discriminatory reason for her suspension. Thus, to grant plaintiff leave to amend her complaint with respect to her First Amendment retaliation claim would be futile.

### D. Jones's Hostile Work Environment Claim

Jones also claims that ODH's racial discrimination over the course of her employment created a hostile work environment that violated Title VII. The Supreme Court has described a hostile work environment as one "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]" *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (quotations omitted). The Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment," and that a "mere offensive utterance" or the "sporadic use of abusive language, [race]-related jokes, and occasional teasing" do not create a hostile work environment. *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (quotation omitted). To trigger Title VII liability, a reasonable person must be able to find the work environment hostile or abusive. *Harris,* 510 U.S. at 21.

■■■ To make out a prima facie case of hostile work environment, Jones must establish the following five elements: 1) that she was a member of a protected class; 2) that she was subjected to unwelcomed ra-

cial harassment; 3) that the harassment was based on race; 4) that the harassment had the effect of unreasonably interfering with her work performance by creating an intimidating or offensive work environment; and 5) the existence of employer liability. *Hafford v. Seidner,* 183 F.3d 506, 512 (6th Cir.1999).

Jones, in her brief, asks us to focus on the following three pieces of evidence that she claims, in addition to the alleged instances of retaliatory conduct discussed earlier, prove the existence of a racially hostile work environment: 1) a psychologist's report showing that Jones suffers from a severe stress reaction to the workplace environment; 2) the deposition testimony of Harry Heath, one of Jones's subordinates, who stated that Eberly once stopped by the mailroom, a department over which Jones had supervision, and started asking questions about the mailroom in an attempt "to dig up stuff against" Jones; and 3) the affidavit of Robin Wilson, another of Jones's subordinates, who stated that, in late 1998 or early 1999, Anne Harnish, Jones's immediate supervisor at ODH, brought her to Harnish's office and told her that even though Jones was Wilson's boss, Wilson was doing a much better job than Jones and that Wilson "was the one doing all of the work and doing Freya's job while Freya sits back and makes the big money." Appellant's Br. at 25; J.A. at 411 (Heath Dep.); J.A. at 311 (Wilson Aff.).

■ With regard to the first piece of evidence, while Jones does show that she subjectively perceived her work environment to be hostile, the psychologist's report does not provide any evidence of an objectively hostile work environment, a showing which is required to trigger Title VII liability. *Harris,* 510 U.S. at 21. As for the evidence from Jones's subordinates, rather than evidencing a hostile work environment, this evidence is best placed in the category of what the Supreme Court has called "ordinary tribulations of the workplace." *Faragher,* 524 U.S. at 788 (quotation omitted). As the Supreme Court has stated, the standards for hostile work environment must be sufficiently demanding such "that Title VII does not become a 'general civility code.'" *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)).

Viewing the facts in the light most favorable to Jones, and considering the totality of the circumstances alleged by Jones, the conduct in this case is simply neither severe nor pervasive enough to meet this circuit's, and the Supreme Court's, definition of an objectively hostile work environment. Thus, we AFFIRM the district court's decision granting ODH summary judgment on Jones's hostile work environment claim.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment for defendants in this case.